LANGWORTHY *et al.* v. McKELVEY *et al.*

1. Injunction bond: ATTORNEYS' FEES: WHERE INJUNCTION IS AUXILIARY. While a reasonable compensation paid an attorney for legal services in procuring the dissolution of an injunction, may be recovered in an action on the bond, attorneys' fees for services in defending the entire action, to which the injunction was merely auxiliary, will not be allowed.

2. —— WHERE INJUNCTION IS NOT MERELY AUXILIARY. It seems a different rule might prevail in a case where the injunction was dis-

solved after a hearing on the merits, and it was the only relief sought.

3. —— OBEDIENCE TO WRIT. The defendant in an injunction proceeding must yield obedience to the commands of the writ, whatever may be his convictions as to the equities of his adversary's case; and in an action by him, afterwards, on the bond, the defendant will not be permitted to say that plaintiff might have prevented damage by doing certain things, if the doing of them was prohibited by the writ.

*Appeal from Dubuque District Court.*

MONDAY, JUNE 8.

ACTION ON INJUNCTION BOND. — The defendants, Mc-Kelvey, Neal and Hancock, commenced their suit in equity against the present plaintiffs, asking and obtaining an injunction. In that proceeding they claimed that they were owners of railroad bonds to the amount of $60,000; that these plaintiffs owned like bonds amounting to $92,000; that said plaintiffs, acting as their agents, sold all of said bonds at one trade for $30,000 in New York acceptances, the said acceptances being secured by a deposit of other railroad bonds to the amount of $60,000. They also stated, in their petition, that they were paid $5,000 of said acceptances, plaintiffs representing that this was the full amount for which their (the present defendants) bonds sold; that in fact their bonds sold for $12,000; that they were entitled, therefore, to $7,000 more of said acceptances and $14,000 of said collateral bonds and $\frac{15}{38}$ of two other bonds; that the said agents practiced a fraud upon them; that they were insolvent; and the prayer was, that they be restrained from selling or disposing of said drafts or bonds, or any of them, etc. The case was heard on its merits — the equities found for defendant therein (the present plaintiffs), and the "bill and action dismissed."

Langworthy v. McKelvey.

The writ of injunction recited, that, whereas the petition claimed that the defendants therein unlawfully, etc., withheld certain drafts, etc., amounting to $7,000 — and also fourteen bonds of, etc., of $1,000 each, which they received, etc., as collateral security for the payment of said drafts, and also $\frac{15}{9}$ interest in two other like bonds — the said drafts and bonds being part of those received in payment of sixty bonds, the property of said plaintiffs — and then directs that the said defendants (Langworthys) be enjoined from selling, or in any manner disposing of, said property, or any part thereof, or any property or thing of value received by them in payment, or part payment for said sixty bonds, but that they should safely keep the same till the further order, etc.

The petition in this case claims $2,000 damages against the principals and their sureties on the injunction bond, as follows: Amount paid attorneys for services in procuring a dissolution of said injunction, and loss sustained in being deprived of the use of said bonds and drafts, and in the depreciation of their value. On the trial, certain testimony offered by plaintiff was rejected; this resulted in a judgment for defendants, and, complaining of the action of the court in these rulings, plaintiffs appeal.

*Adams & Robinson* for the appellants.

*Griffith & Knight* for the appellees.

WRIGHT, J. — The injunction bond, after briefly reciting the prayer of the petition, was conditioned that 1. INJUNCTION BOND: attorneys' fees: where injunction is auxiliary. the obligors should pay to defendants therein, any damage they might sustain by reason of the issuing of said writ, etc.

One of the plaintiffs, as a witness on the stand, was asked "what attorney's fees they paid for legal services

in procuring a dissolution of the injunction." This being objected to — and it being conceded that the injunction was dissolved "upon hearing and adjudication of the case and not upon a motion to dissolve, nor otherwise than upon a defense to the suit on its merits," the court ruled that attorney's fees were not recoverable, and sustained the objection to the question. Was this ruling correct, is the first question on this appeal.

It was held in *Behrens* v. *McKenzie* (23 Iowa, 333), that a reasonable compensation for legal services, in procuring a release of the injunction, might be recovered as damages in an action on the bond; but that this would not allow attorneys' fees for services in defending the entire action, but alone for procuring the dissolution of the writ or releasing the property from its operation. And this is as far as, we think, the rule should go. In this case the prayer for the injunction was merely auxiliary or incidental to the relief sought in the principal matter in controversy. The dissolution of the injunction would not dispose of the case, for plaintiffs therein had equities which they could enforce, if successful, whatever the fate of their injunction. If they had commenced their action without asking an injunction, as they might, and had failed, there can be no pretense that defendants (the present plaintiffs) could have recovered compensation or damages for counsel fees in defending that action. "Every defendant against whom an action is brought, experiences some injury or inconvenience beyond what the costs will compensate him" (Broom's Max. 95); and yet, in the absence of fraud, malice or the like, there must be what is termed a division of the loss; and while the successful party recovers his costs, he cannot recover for what is known as a loss indirect in its nature, and in which would be included compensation to his counsel. Sedgwick on Measure of Damages, 38, 95.

Nothing of this kind is pretended. The bond was conditioned to pay damages sustained by reason of the issuing of the writ, not by reason of the bringing of the action. And as the counsel fees for which plaintiffs sought to recover were those paid for defending the case upon its merits, we think the court ruled correctly in excluding this evidence.

If a case should arise where the injunction was dissolved after a hearing on the merits, and this was the only relief 2. —— where sought and all there was in the case, we are injunction is not auxiliary. not to be understood as holding that counsel fees might not be recovered. In other words, we do not hold that such recovery is to be confined alone to cases where the injunction is dissolved on motion.

In the further progress of the trial, plaintiffs asked the same witness this question: "What was the value of the 3. —— obedi- bonds and drafts described in the petition in ence to writ. the injunction suit? and did the same increase or decrease in value during the pendency of said action?" This was objected to upon the ground that it appeared from the result of the injunction suit that there were no bonds in existence upon which the writ could operate. The objection was sustained, the learned judge ruling that plaintiffs must first show that the bonds and drafts mentioned in the petition in the injunction proceeding were received by them for the $60,000 of bonds sold by them for McKelvey, Neal and Hancock, because they were so described in the petition in said suit.

Plaintiffs then further offered to show that said drafts and bonds were received in part for said $60,000 of bonds sold for McK., N. and H., in the following manner: Plaintiffs held $92,000, railroad bonds of a certain issue; McK., N. and H., $60,000 of a different issue; that plaintiffs sold all said bonds, amounting to $152,000 at one time, for $30,000 of drafts on New York, due 70, 100

and 130 days, in equal proportions; that the bonds of McK., N. and H. were estimated and sold for $5,000, and the balance for $25,000; but no specific drafts were received for any specific bonds; to all which defendants objected, because it was not sufficient to show that the bonds of McK., N. and H. were sold for an undivided part of $30,000 in drafts, including the drafts in question; it appearing by the answer in the injunction suit, and it being conceded by plaintiffs, that the said $60,000 bonds sold for $5,000, which had been paid by plaintiffs before the writ of injunction was applied for or issued. The objection was sustained, the court also ruling that the drafts having matured, it was competent for plaintiffs to proceed, notwithstanding the injunction to collect the same by a judicial sale of the bonds held as collateral, and that they were not, therefore, damaged by the injunction." Plaintiff's exceptions to these several rulings constitute the only other matters presented for our determination.

The very basis of plaintiff's defense to the injunction suit was, that the drafts and collateral bonds held by them were not received for the $60,000 belonging to the petitioners therein, but that their bonds were sold for $5,000, which they had received. On the other hand, plaintiffs, in that proceeding, claimed that they were entitled to $7,000 more and to a certain amount of the collaterals held by the Langworthys to secure the same. On the hearing the chancellor found that plaintiffs in that action had been paid all that they were entitled to, and that they, therefore, had no interest in either the bonds or drafts still held by defendants. By their action, however, they claimed such interest, and procured the injunction in view of defendants' insolvency for the purpose of restraining the sale or negotiation of such securities. And to hold, therefore, that, in this proceed-

LAW SCHOOL LIBRARY

ing, plaintiffs could not show a depreciation in the value of the bonds and drafts and consequent loss, until they established that they were received for the $60,000 of bonds sold, it seems to us would be a strange misconception of the whole gravamen of the action. Because they were not thus received, but were the property of the defendants in the former suit, the injunction was dissolved and the bill dismissed. And yet, now, when suit is brought on the bond, they are told that they cannot prove their damages until they show that to be true, which plaintiffs claimed in the first action; which they (the then defendants) denied, and in which denial they were sustained by the decree. It would seem (aside from the effect of the judgment dismissing the bill) that nothing could be more damaging to plaintiffs' case, than the very matter which, according to the ruling of the court below, they must establish before they could recover. What they needed to show, was, just what the judgment in the injunction suit established, to wit, that these bonds and drafts were *not* received for the $60,000 sold for McK., N. and H. Nor is there any force in appellees' position that it appears, as the result of the injunction suit, that there were no bonds in existence upon which the writ could operate. There were bonds — bonds in the hands of the present plaintiffs. This is not denied, and the object of the injunction was to restrain their sale. If the objection means any thing, it is but the statement in another form of the point ruled by the court.

To say that there were no bonds upon which the writ could operate — because the court found in dismissing the bills that plaintiffs therein had no right to them, begs the whole question. For the logic of it is, that a plaintiff to an injunction proceeding, if unsuccessful, when sued upon his bond can say, "I was wrong — you (defendant) was right, and, this having been judicially

determined, you are not entitled to damages for my wrongful act."

It legitimately follows from the foregoing views, that the testimony afterward offered, tending to show how the bonds were negotiated — the actual transaction — was competent (whether necessary to a recovery on the bond we do not inquire). It is true that the Langworthys might, pending the injunction, have known full well that the parties assigning them had been paid all they were entitled to, and this they may have stated, and did state, in their answer in that action, and yet they would have no right to disregard the command of the writ. Their duty was to yield obedience to the order of the court, and only at their peril could they have proceeded to dispose of or negotiate the bonds. Whatever their opinions or convictions as to the equities of their adversary's case, so long as the injunction was in force they were bound to respect it. Until set aside it was entitled to their obedience. *Moat* v. *Holbien*, 2 Edw. 188; *People* v. *Sturtevant*, 9 N. Y. 263; *Higbie* v. *Edgarton*, 3 Paige, 253. The command of the writ was very broad and comprehensive, and when taken in connection with the averments of the bill and the prayer, operated to restrain the present plaintiffs from selling, or in any manner disposing of, the bonds or drafts, or of any of them; but the same were to be safely kept until the further order of the court. How they could in the face of this broad and sweeping command proceed to sell the bonds by a "judicial sale," and thus collect the drafts, without being guilty of a violation of a solemn order of an officer having full power to make it, we cannot imagine. Indeed, what is meant by the ruling in relation to a "judicial sale," does not very clearly appear. It was doubtless based upon some fact not disclosed by the record, for it is not pretended that all the evidence is before us.

Because of the errors in rejecting the testimony in relation to the depreciation of the bonds, etc., as above explained, the judgment below is reversed and the cause remanded for trial *de novo*.

Reversed.