# ABRAHAM R. WING *et al.*

*v.*

# CATHARINE L. DODGE *et al.*

1. JUDICIAL SALE—*valid collaterally, if the court had jurisdiction.* If the court ordering a sale of real estate has jurisdiction of the subject matter and of the parties, no mere errors can have any effect upon the sale, or the title under it. Until reversed the decree confers power to sell and pass the title, if there was jurisdiction, however erroneous the decree may be.

2. STATUTES CONSTRUED—*sale of estates of lunatics, etc.* The act of 1853, authorizing the sale of the real estate of any idiot, lunatic or distracted person, for certain specified purposes, has no reference whatever to non-resident owners. It applies only to cases where the idiot, lunatic or distracted person and his conservator reside in this State. Sales by non-resident conservators are authorized by the act of 1865.

3. CONSERVATOR'S SALE—*jurisdictional facts.* A proceeding to sell the lands of a lunatic, etc., under the act of 1853, can only be instituted by a conservator of this State and on behalf of a resident of this State, and the petition must show the facts and specify the purposes for which the sale is sought, and these must be for one or more of the objects named in the act. But when application is made by a non-resident conservator or guardian of an insane person, the law does not require the petition to state the purposes for which the property is to be sold. It seems sufficient to confer jurisdiction for the petition to show that the court of the State where the conservator resides has required the sale, without reference to the application of the proceeds.

4. SAME—*of the notice of the application.* Notice published in a daily newspaper, three insertions in each successive week, the first being not less than thirty days before the presentation of the petition, of the time and place

of presenting the petition, requesting all persons interested to show cause why the prayer of the petition shall not be granted, is sufficient to give the court jurisdiction on an application by a non-resident conservator for the sale of real estate. The notice need not be inserted in each daily issue of the paper.

5. SAME—*findings as to jurisdiction conclusive in all collateral proceedings.* Where the court, in a decree ordering the sale of lands of a non-resident idiot, lunatic, etc., finds that the petitioner was regularly and legally appointed guardian or conservator of the owner, by the probate court of another State, under the laws of such State, and that the petitioner had fully complied with the law in procuring the proper order of the probate court of such State for leave to sell the lands, and executed the requisite bonds, this finding will be conclusive in all collateral proceedings, and upon the purchaser of the property in a suit by him to enjoin the collection of the purchase money.

6. CONSERVATOR OF INSANE PERSON—*acts of, binding, until removed.* Where the statute of a State authorizes the probate court to appoint a married woman guardian of an insane person, etc., without the concurrence of her husband, and the court appoints the wife of an insane person as his guardian, her acts will be legal and binding until removed, whether the statute contemplated such an appointment or not. Whether the wife might be so appointed, in nowise affects the power of the court, even though its action was erroneous.

7. JUDICIAL SALE—*sale of guardian through an agent.* Where the sale of real estate by a foreign guardian of an insane person is made through an agent, the guardian not being present making or directing it, and the guardian adopts the act of her agent, and the court approves the sale, there being no exceptions on this account, and the sale is fairly made and for a good price, it will be binding on the purchaser, and it is doubted whether the sale could be impeached in a direct proceeding.

8. SAME—*caveat emptor as to purchaser.* Where the court ordering sale of real estate has jurisdiction of the subject matter and of the proper parties, even if the proceedings are irregular and erroneous, the purchaser can not avoid the sale, as the doctrine of *caveat emptor* applies in all judicial sales.

9. SAME—*failure of consideration no cause for setting sale aside.* If the crier of a judicial sale of real estate on behalf of the guardian of an insane person states publicly, at the sale, that the guardian will pay certain assessments on the property, which is not done, this will furnish no ground to set aside the sale by the purchaser, or furnish any grounds of equitable relief. His remedy, if any, is at law, for a failure of consideration, when sued on his notes for the purchase money.

10. INJUNCTION—*damages on dissolution.* After the dissolution of an injunction the defendant may file his suggestions and claim damages, at any

time before the decree is signed and filed, and the court may dispose of the suggestions even after the decree is filed. It is error to refuse leave to file them before the decree is filed.

APPEAL from the Circuit Court of Cook county.

This was a bill in chancery, by Abraham R. Wing and J. Whitney Farlin, against Catharine L. Dodge, personally and as guardian of John C. Dodge, Andrew J. Brown, Albert J. Averill, John J. McKinnon, John W. Marsh and John C. Dodge, to enjoin the collection of notes given for the purchase money of lands sold under a decree of court, and to set aside the sale.

Mr. JOHN BORDEN, and Mr. D. G. TUNNICLIFFE, for the appellants.

Messrs. GOUDY & CHANDLER, for the appellees.

Mr. JUSTICE WALKER delivered the opinion of the Court:

Complainants having become purchasers of real estate at the guardian's sale, executed their notes for the purchase money, received deeds of conveyance from the guardian, and the sale having been approved by the circuit court of Cook county, they ask that the collection of the notes be enjoined and the sale set aside and canceled. The grounds urged are, that the court failed to acquire jurisdiction, and the sale was void, and hence there was no consideration for the notes, and that their collection should be enjoined; that the guardian was not present at, nor did she conduct the sale in person. Also, that the complainants are entitled to a credit on the notes, even if the sale was legal, because it was announced at the sale that the guardian would pay certain park assessments due in 1872, which she has not done.

The first and vital question in the case is, whether the court acquired jurisdiction of the persons of the parties and the subject matter of the suit. If so, then all errors, merely, can have no effect upon the sale or the title under it. Until reversed the decree would confer ample power to sell and pass the title

of the lunatic, if there was jurisdiction, however erroneous the decree.

It is urged that the circuit court did not acquire jurisdiction in this case, as the petition did not state the object specified in our statute authorizing a sale.

The act of 1853, section 1, page 215, provides that whenever it shall become necessary to sell the real estate of idiots, lunatics or distracted persons, for the purpose of paying debts, supporting a family, or educating children, or when it shall be proper to make such sale for the purpose of investing in real estate, the conservator shall petition the circuit court, etc., asking an order authorizing such sale. This act was adopted in reference to such persons residing in our State, and without the slightest reference to non-resident owners of property in this State. A proceeding, therefore, under this act could only be instituted by a conservator of this State, and on behalf of a resident of this State; and the petition would be required to show the facts and specify the purposes for which the sale was sought, and the petition could only be for one or more of the objects specified in the act.

But for the purpose of giving the conservators of non-residents owning real estate in this State the power to make sales for the necessities of their wards or their estates, the General Assembly in 1865, (see Sess. Laws, page 109, section 2) conferred upon them that power. That act provides that the conservator, guardian, or committee of any non-resident insane, lunatic or distracted person, who shall have obtained, or shall obtain an order from any court of record having jurisdiction over such matters, in any State where such guardian, etc., shall be appointed, for the sale of any real or personal property, or any interest therein, belonging to such person, situated in this State, upon filing a certified copy of such order for record in the office of the clerk of the circuit court in the county in which the property is situated, by petition to the circuit court of the county, to obtain an order authorizing such conservator, etc., to sell and transfer such property, etc., and to make deeds, etc. The section then provides for notice to be given, etc.

It will be observed that this latter act does not specify what the petition shall contain, nor does it specify the purposes for which the property shall be sold. Nor could it be expected that we should find such provisions, inasmuch as the money arising from such a sale is expected to be taken out of, and pass entirely from the control of this State and its jurisdiction. It would be absurd to give such power to a conservator, and then endeavor to control the disposition or use of the money in another State. Could any one be found who would suppose it reasonable that our law would license a foreign conservator, under the direction of the proper court in his State, to sell the land, receive the money, and take it to his domicil, report it to that court, and our laws or courts could still control its use or investment. It can not be supposed that any one would seriously contend for so unreasonable a proposition. The statement of the proposition, we apprehend, fully answers such a claim, if it could be seriously made. When the statute permits the fund to pass beyond the limits of the State, our laws cease to have any control over it. This is a proposition so plain as to strike all as being manifestly true.

This is the very purpose of allowing the sale, and the statute was passed to enable the fund to come under the control of the courts and the laws of other States, to be used, applied or invested under the laws of such other States.

The statute gives the court of the State in which the conservator resides the sole power to determine whether the real estate shall be sold; nor has it limited that court to the purpose to which it shall be applied. Had such been the intention, such a limitation would have undoubtedly been imposed; but we can not suppose that the legislature would do so useless and absurd a thing, as it would be wholly impracticable for our laws to attempt to control the conservator in the use or application of the fund beyond the limits of our State; but he and the fund both are under the control of the court of his residence, where he can be controlled in its use and expenditure.

It is urged that the notice that the petitioner would make

application for leave to sell this real estate, was insufficient to confer jurisdiction on the circuit court to hear the cause and render the decree. It appears, from the certificate of publication filed in the case, that the notice was published once a week, for four several weeks, commencing the requisite period before the commencement of the term. But the notice was published in a daily newspaper. Was this the notice required by the statute? It provides that notice of the time and place of presenting the petition to the circuit court shall be given, by publication in the nearest newspaper, for three successive weeks, the first of which publications shall be at least thirty days before the time fixed for the presentation of the petition, requesting all persons interested to show cause why the prayer of the petition should not be granted.

It does appear, from this certificate, that the notice was inserted in this newspaper for three successive weeks. The first notice was in the paper bearing date the 13th day of June, 1872, which was an insertion in one week; the next was inserted on the 20th, which was in another and the next successive week; and the next was inserted on the 27th, which was the next successive week; and the last was on the 3d day of July. It is difficult for us to comprehend how it can be said, that it is not shown that there was not a notice given for three successive weeks. When the publication was made, it was manifestly a notice, nor did the fact that it was published in a daily paper render it any less a notice. Nor can there be any pretense for saying, that because the paper was published daily, it was not a newspaper. Nor can we conceive how it can be said that it was not published by weekly and successive insertions because it was not published in the papers issued on each and every day. Had the statute required successive daily instead of weekly publications, then a different rule would, no doubt, have to be applied.

It is manifest that had this notice been published on the same days it was, in a weekly paper, the requirements of the statute would have been fully answered. Then, in what essential particular does this publication differ from that? The

notice would, in all probability, reach as many, if not more, than had the publication been in a weekly paper. The information imparted in each case is the same. The publication appeared the same number of times, and on the corresponding days that it would in a weekly paper. Hence, we perceive no essential difference in the case supposed and that at bar. In giving this construction, we do no violence to the language of the statute, but rather follow what strikes us as its obvious meaning; nor can we see any injury or wrong from its application in practice. We are, therefore, satisfied that the requirements of the statute were observed in this publication.

Mrs. Dodge, so far as we can see, was regularly appointed guardian for her husband, by the probate court of Essex county, in the State of Massachusetts, and in strict conformity to the statutes of that State. Those statutes authorized that court to appoint a guardian for an insane person, and the decree of the circuit court finds that the appointment was legally made. Such a finding in a decree can not be impeached, or even questioned, in a collateral proceeding. Although the court rendering the decree may have found on insufficient evidence that she was legally appointed, that question will not be again tried in another proceeding. It may, no doubt, be questioned on error or appeal, but not on an issue formed in a new suit. The trial and judgment in one case on issues there formed, can not be impeached or retried on the trial of another case by other and different parties. When the record shows facts which confer jurisdiction, these facts can not be impeached collaterally; or, when the court solemnly adjudicates and determines, on evidence, that facts exist showing that there is jurisdiction, parties in a collateral proceeding will not be permitted to contradict the facts, so as to contradict such finding.

This is in strict accordance with all authority. And the security of titles, and other rights acquired under judicial proceedings, imperatively demand that the rule should be recognized and rigidly enforced. And the court further found that the guardian had fully complied with the law in procuring the proper order of the probate court for leave to sell the real

estate of her insane husband, and had executed the requisite bonds under the statute.

The petition seems, in all respects, to contain all the allegations necessary to confer jurisdiction, and, so far as we can see, all other things required by the statute were done, necessary to confer jurisdiction to enable the court to act upon the subject matter. Our statute has authorized our circuit courts, on a proper showing by a guardian, appointed in another State, to apply for leave to sell real estate belonging to a lunatic, situate in this State. And the circuit court, on the application, found the guardian had performed all necessary acts to invest it with power to proceed to hear, adjudicate and decree in the case, and in this proceeding we will not go behind the decree to see whether the evidence warrants the court in decreeing as it did. That is a matter that must be considered and treated as *res adjudicata*, and conclusive on all parties, in a collateral proceeding.

It is, however, urged that under the laws of Massachusetts Mrs. Dodge could not be appointed a guardian for her husband. The statute of that State authorizes a married woman to become a guardian, trustee or executrix, and to so act, without the concurrence of her husband. The probate courts, in that State, had the power to make an appointment of such a guardian, and having appointed appellee, whether such an appointment as this was intended or not by the statute, in nowise affected the question of power. Even if it was erroneous, that in nowise related to or controlled the exercise of the power. The court had ample power to appoint some person, and whether or not the person was suitable and proper to fill the place and to exercise the trust, in no sense affected the exercise of the power. If not a suitable person, or one not authorized by the statute, it would, no doubt, be sufficient ground for the removal of such person. But, until removed, all acts legally performed must be held to be valid and binding. To hold otherwise would be violative of all precedent, and disastrous to the rights of persons holding titles derived through their acts as such guardians.

It is next urged that the guardian was not present making or directing the sale. Such an objection might, no doubt, have been urged with more plausibility on the coming in of the report of the sale. But the report was made to and confirmed by the circuit court, and that decree can only be attacked directly or by bill to impeach it. There is no proof that the sale was fraudulently made, or even that the slightest loss occurred by reason of Mrs. Dodge's absence. If the sale was fair and for a good price, as seems to have been the case here, and she adopted the act of her agent, and the court approved the sale, no harm has been done, and the sale can not be questioned in this proceeding. No reason is perceived, even in a direct proceeding, to question the power of the court below to act, or to reverse any action of the court, and especially so as no exceptions were filed to the manner of conducting the sale.

So far as we are able to see, all the proceedings in the court below were regular. But even if they were not, inasmuch as the court had jurisdiction of both the person and the subject matter, it can not be questioned, to relieve the purchasers. They are presumed, as it was their interest and as the proof shows they did, to have had the title examined and were satisfied to purchase. The rule of *caveat emptor* applies to sales of this character as well as to all other judicial sales. The guardian, as all know, had no right or power to warrant the title, nor did she in the conveyances which she made to the purchasers. They asked no covenants, nor did they expect any, or they would have insisted on them when they received their deeds. Knowing that they were entitled to none, they had the title examined, and purchased at their own risk.

It is urged that the petition fails to allege facts sufficient to confer jurisdiction. We do not so understand the petition. We think it contains all the allegations which the statutes could have contemplated. The petition alleges the proceedings in the probate court in Essex county. It alleges the reasons why a sale was necessary—the purposes for which it should be made. It makes the proper parties, and in fact alleges all that the statutes require to confer jurisdiction.

It is urged that the person who cried the sale stated that Mrs. Dodge would pay certain assessments against the land, which she has failed to do. This is denied, and we think the evidence fails to establish the fact. But even if it did, that would form no ground for setting aside the sale. If it could be held to constitute any defense, it would be at law, and to the notes given for the purchase money. It could not, however, if fully proved, constitute ground for equitable relief. If anything, it would be a failure of consideration, which is declared to be a defense at law.

Appellees assign cross-errors that the court below refused to permit them to file suggestions of damages, on dissolving the injunction and dismissing the bill. In this, we think the court erred. The statute authorizes such a proceeding before the suit is finally disposed of, in the court in which it is pending. As we understand the record, the final decree was not prepared, signed and filed before the motion was made and refused. After the dissolution of the injunction, the defendant may file his suggestions at any time before the decree is filed. The filing of the decree is the final disposition of the case in the circuit court, and the complainant could not appeal until the cause had progressed to that stage, and suggestions might be filed up to the time when the decree is filed, and, if need be, the court should hear and dispose of them afterwards.

A careful consideration of all the questions presented by the assignment of errors by appellants, impels us to the conclusion that they are not well assigned, and the decree must be affirmed, except as to the refusal to allow the assessment of damages on the dissolution of the injunction. But in so far as the decree refused to permit appellees to file suggestions of damages, by reason of the wrongful suing out of the injunction, there is error, and to that extent only is the decree reversed, and the cause remanded to hear evidence and determine whether appellees have sustained such damages.

*Decree affirmed in part.*