# JOHN B. GERARD

## v.

# ANTOINE GATEAU.

1. DISSOLUTION OF INJUNCTION—SUGGESTION OF DAMAGES.—Where permission to file the suggestion of damages in case of the dissolution of an injunction at a subsequent day of the same term was reserved in the decree, and the complainant raised no objection but waived the irregularity, if it was one, by subsequently entering into stipulations for the continuance of the proceedings and by finally appearing without objection and resisting the assessment of damages on the merits, it is now too late to raise any question as to the time of filing the suggestion. The fact that the suggestion was not heard and disposed of until a subsequent term is not material.

2. WAIVER OF REMANDING ORDER.—If it be true that the appeal to the Supreme Court in such case superseded the jurisdiction of the circuit court so as to require a remanding order from the former court before the latter could proceed further in the assessment of damages, the court is of opinion that the voluntary appearance of complainant in the circuit court after the decision of the appeal, without waiting for or requiring the formality of a remanding order, and litigating the matter of the assessment of damages without objection, amounted to a waiver of a remanding order and authorized the court to proceed to assess the damages.

3. WHEN THE SUGGESTION OF DAMAGES MUST BE FILED.—In case of a proceeding for the recovery of damages upon the dissolution of an injunction, the suggestion of damages must be filed before the final disposition of the case, that is, before the entry of the final decree. If filed at a subsequent term it comes too late, and confers no authority on the court to assess damages.

4. SAME—WHAT DAMAGES RECOVERABLE.—The damages recoverable are limited to such as may have then accrued. Such proceeding can not apply to damages resulting from a subsequent revival of the injunction pending an appeal.

5. PARTNERSHIP—SALARY.—One partner can not charge the other partners or the firm for services rendered in the business of the copartnership, unless there is an express agreement to that effect. Where partners stipulated that they should respectively, during the first five years of the copartnership, draw no more money out of their business for their own personal use than should be absolutely necessary for the support of their families, not to exceed $100 per month, the residue of the profits to be applied to the business of the firm. Held, not an agreement for the payment of a compensation or salary, but a limitation for the period of five years upon the division of the profits. It was therefore error to award defendant damages for the loss of salary.

6. COSTS AND EXPENSES INCURRED, WHEN ALLOWABLE AS PART OF THE DAMAGES.—Costs and expenses, reasonable in amount, incurred for the single object of obtaining a discharge of the injunction, are allowable as part of the damages sustained by reason of the injunction. But where counsel fees and expenses are incurred in defeating the action, and the dissolution of the injunction is only incidental to that result, such fees and expenses are not allowable.

7. DAMAGES TO BUSINESS.—Damages to the defendant's business, and a consequent loss of profits, if any such resulted from the injunction, are allowable as damages, "by reason of the injunction." The court is of opinion that no damages under this specification were proved in this case, and also that there is no foundation for the claim of interest on defendant's capital embraced in the business.

ERROR to the Circuit Court of Cook county; the Hon. THOMAS A. MORAN, Judge, presiding. Opinion filed November 11, 1884.

This was a decree in chancery, for damages assessed in pursuance of the statute, upon the dissolution of an injunction. It appears that on the first day of January, 1872, the complainant, John B. Gerard, and the defendant, Antoine Gateau, entered into a copartnership, for the purpose of manufacturing and selling zinc roofing, cornices, architectural ornaments, etc., such copartnership to continue for the term of ten years, the complainant to contribute $12,000 to its capital, and the defendant to contribute certain dies which he then had, valued at $3,500, and the complainant to be paid interest on the excess of his contribution, at the rate of ten per cent. per annum. It was provided in the articles of copartnership that the defendant should give his entire time and skill to the business of the firm, but that the services to be rendered by the complainant should be left to his discretion. It was further provided that, for the first five years said parties should draw no more money out of the business for their own personal use than should be absolutely necessary for the support of their families, which should not exceed $100 per month for each, the residue of the profits to be used in the prosecution of the business. Among the causes which it was provided should work a dissolution of the copartnership, were the incapacity, embezzlement, or gross neglect or misconduct of either party.

On the 23d day of April, 1874, the complainant filed his bill against the defendant, charging him with incapacity and mismanagement of the affairs of the copartnership, and praying for a dissolution of the copartnership, and a distribution of the copartnership assets, and for an injunction restraining the defendant " from employing or paying any help, collecting any debts, selling, assigning or disposing of any property, or doing any business whatever for the firm." On the same day a preliminary injunction was issued in accordance with the prayer of the bill, an injunction bond being required in the penal sum of $2,000. On the 29th day of October, 1874, the cause came on to be heard on the pleadings and proofs, and thereupon a final decree was rendered, dismissing the bill for want of equity. From this decree the complainant prayed an appeal to the Supreme Court, which was allowed on condition that he file a certain appeal bond within twenty days, and in the same order leave was granted the defendant to file, by the Monday morning following, which was during the same term of court, a suggestion of damages by reason of the injunction.

The complainant having perfected his appeal, applied to one of the justices of the Supreme Court for an order directing that the appeal should have the effect to continue the injunction in force, which order was granted on the complainant's filing a further injunction bond in the penal sum of $4,000. At the September term, 1876, of the Supreme Court the decree appealed from was affirmed. Gerard v. Gateau, 84 Ill. 121.

The matter of the defendant's suggestion of damages was continued by the court from time to time, down to the date of the revival of the injunction in the Supreme Court, when an order was entered continuing the same during the time the injunction should remain in force, with leave to either party to call the same up for further action in case the injunction should be finally dissolved. On the 9th day of February, 1877, the matter of said suggestion of damages was redocketed, and at the same time an amended suggestion was filed covering also the damages alleged to have accrued during the pendency of the appeal. Thereafter the matter was

Gerard v. Gateau.

continued from term to term, sometimes on motion of the defendant, and sometimes by stipulation of the parties, down to July 11, 1883, when the matter was finally heard and the defendant's damages assessed.

At the time of said assessment of damages, both the original and amended suggestion seem to have been lost from the files, and thereupon copies of the same were substituted therefor. The items of the original suggestion are thus shown to be as follows:

For solicitors and counsel fees in attempting to have the injunction
   dissolved, ......................................................... $  750
For defendant's share in the profits of the business, which were lost
   by the injunction, ................................................. 6,000
For the salary to which defendant was entitled during the six
   months immediately following the injunction, during which time
   the defendant was unable to secure work, ........................ 600
For the use of and interest on the money invested by defendant in
   the business of Gerard & Gateau, and retained by plaintiff by
   reason of said injunction, ........................................ 700

Total charges claimed, ............................................ $8,050

The items of the amended suggestion were as follows:

For solicitor's fees expended by the defendant in attempting to dis-
   solve the injunction in this cause, from April 23d to October 29,
   1874, ............................................................. $  750
Same from October 29, 1874. to January 31, 1877, ................ 1,500
For defendant's share of the profits which would have accrued to
   the business of Gerard & Gateau, if the injunction had not been
   issued and defendant had continued to manage the business, from
   April 23d to October 29, 1874, .................................. 6,000
Same from October 29, 1874, to January 31, 1877, ............... 14,000
For other expenses in obtaining a dissolution of the injunction, be-
   sides solicitor's fees, from April 23d to October 29, 1874, ........ 300
Same from October 29, 1874, to January 31, 1877, ............... 500
For defendant's salary under the partnership agreement, of which
   he was deprived during the continuance of the injunction, during
   all of which time defendant was out of and unable to obtain em-
   ployment in his line of business, from April 23d to October 29,
   1874, ............................................................ 700
Same from October 29, 1874, to January 31, 1877, .............. 2,700
For interest on defendant's capital invested in said business from
   April 23d to October 29, 1874, .................................. 700
Same from October 29, 1874, to January 31, 1877, .............. 2,500

Total damages claimed, ........................................... $30,000

In the assessment of damages, the court awarded to the defendant the following items, to wit:

| | |
|---|---|
| For solicitors and counsel fees from April 23, 1874, to October 29, 1874, ....................................................... | $  500 |
| For loss of salary during the same time, ........................... | 600 |
| For solicitor's fees from October 29, 1874, to January 31, 1877, ..... | 800 |
| For loss of salary during the same time, ........................... | 2,700 |
| | $4,600 |

A decree was thereupon entered in favor of the defendant and against the complainant for said sum of $4,600 and costs. The allowance of each of said items is assigned for error by the complainant, and the defendant has filed cross-errors upon the refusal of the court to award him the remaining items contained in the suggestions.

Messrs. GRANT & BRADY, for plaintiff in error; that the circuit court had no jurisdiction to assess damages which accrued to defendant while the suit was pending in the Supreme Court, and did not, after the perfecting of the appeal, have jurisdiction for any purpose except to execute its own final decree, cited Albright v. Smith, 68 Ill. 181; Galloway v. Mayor, 3 De G. J. & S. 59; 2 High on Injunctions, § 1701.

As to the damages which may be recovered: 2 High on Injunctions, § 1663; Collins v. Sinclair, 51 Ill. 328; Brown v. Jones, 5 Nev. 374; 2 Sutherland on Damages, 69; Bullock v. Ferguson, 30 Ala. 227; Uhrig v. St. Louis, 47 Mo. 528; Chicago City Ry. v. Howison, 86 Ill. 215.

Where the injunction is only incidental and not the principal object of the suit wherein it is granted and counsel fees are paid generally, such fees can not be recovered, because they are not damages sustained by reason of the injunction: Noole v. Arnold, 23 Ohio, 264; Riddle v. Cheadle, 25 Ohio, 278; 2 High on Injunctions, § 1686; Wilson v. Haecker, 85 Ill. 349; Longworthy v. McKelvey, 25 Ia. 48; Disbrow v. Garcia, 52 N. Y. 654; Elder v. Sabin, 66 Ill. 126; Jevne v. Osgood, 57 Ill. 340; Alexander v. Colcord, 85 Ill. 323.

Mr. M. SALOMON, for defendant in error; that the order of the Supreme Court suspended the operation of the decree and

dissolution of injunction, which, when affirmed by the Supreme Court, again became operative, cited R. S. Ch. 69, § 21; R. S. Practice Act, Ch. 110, § 83; Bressler v. McCune, 56 Ill. 475.

The court had the power to continue from term to term the hearing of evidence, to assess damages, and even to allow suggestion to be filed after decree: McWilliams v. Morgan, 70 Ill. 551; Wing v. Dodge, 80 Ill. 565.

As to damages for loss of profits: Hotchkiss v. Platt, 8 Hun, 48; I. & St. L. R. R. & Coal Co. v. Decker, 3 Bradwell, 135; Chapman v. Kirby, 49 Ill. 212; 2 Sedgwick on the Measure of Damages, 7; Lawrence v. Hagerman, 56 Ill. 70.

As to the allowance of interest: Corcoran v. Judson, 24 N. Y. 107; Aldrich v. Reynolds, 1 Barb. 615.

Bailey, J. The point is raised that the circuit court, at the time the damages were assessed, had no jurisdiction to make the assessment, because, 1, the suit had been disposed of by a final decree before the suggestion of damages was filed; and, 2, because, by the appeal, the suit was removed to the Supreme Court, and the jurisdiction of the circuit court superseded, and there was no remanding order restoring jurisdiction to that court.

It is not clearly shown when the suggestion of damages was first filed, as the original paper seems to have been lost, but enough appears to warrant the presumption that it was filed within the time limited in the order of the court. It doubtless would have been more strictly in accordance with the terms of the statute to file the suggestion before the final disposition of the case by the entry of a decree, and had the point been raised in the court below, we will not say that it might not have been the duty of the court to refuse to assess the damages. But permission to file the suggestion at a subsequent day of the same term having been reserved in the decree, and the complainant having raised no objection as to the time of filing it, but having waived the irregularity, if it was one, by subsequently entering into stipulations, on one or more occasions, for the continuance of the proceeding

and by finally appearing without objection and contesting the assessment of damages on the merits, we think it now too late to raise any question as to the time of filing the suggestion. It can scarcely be doubted that if the parties had, prior to the entry of the decree, stipulated to extend the time for filing the suggestion to some day in the term, subsequent to the decree, that a suggestion filed in pursuance of the stipulation would have entitled the defendant to an assessment of his damages. We are unable to perceive why the subsequent acts of the complainant in the course of the proceeding, as shown in this case, may not be held to have an effect equivalent to such stipulation.

The fact that the suggestion was not heard and disposed of until a subsequent term, does not seem to be material. This appears to be the view taken in Wing v. Dodge, 80 Ill. 564, where the court, in discussing the proper practice in such cases, say: " After the dissolution of the injunction the defendant may file his suggestions at any time before the decree is filed. The filing of the decree is the final disposition of the case in the circuit court, and the complainant could not appeal until the cause had progressed to that stage, and suggestions might be filed up to the time when the decree is filed, and if need be the court should hear and dispose of them afterward."

Furthermore, if it be true that the appeal superseded the jurisdiction of the circuit court so as to require a remanding order before that court could proceed further in the assessment of damages—a question we do not feel called upon to decide—we are of the opinion that the voluntary appearance of the complainant in the circuit court, after the decision of the appeal, without waiting for or requiring the formality of a remanding order, and litigating the matter of the assessment of damages without objection, amounted to a waiver of a remanding order, and authorized the court to proceed to assess the damages.

It appears from the record that $3,500 of the damages assessed accrued after the final disposition of the case in the circuit court, and during the pending of the appeal, and the allowance of these damages is assigned for error.

Gerard v. Gateau.

The authority of a court of chancery to assess damages upon a dissolution of an injunction is purely statutory. The extent of the power, then, and the limitations, if any, under which it must be exercised, are to be ascertained from the statute itself. The language of the statute is as follows: "In all cases where an injunction is dissolved by any court of chancery in this State, the court, after dissolving such injunction, and before finally disposing of the suit, upon the party claiming damages by reason of such injunction suggesting, in writing, the nature and amount thereof, shall hear evidence and assess such damages as the nature of the case may require and to equity appertain, to the party damnified by such injunction, and may award execution to collect the same."

The plain and manifest meaning of the statute is, that the suggestion of damages must be filed before the final disposition of the case, which is held to mean, before the entry of the final decree. Albright v. Smith, 68 Ill. 181; McWilliams v. Morgan, 70 Id. 551; Wing v. Dodge, *supra*. If filed at a subsequent term, it comes too late, and confers no authority on the court to assess damages. Albright v. Smith, *supra*. The institution of the proceeding, then, being limited in point of time to a period prior to the final decree, the damages recoverable are, as a necessary consequence, limited to such as may have then accrued. Like other proceedings for the recovery of damages, it can apply to such damages only as are recoverable at the date of its institution. It can not be commenced subsequent to the decree, and so can not apply to damages resulting from a subsequent revival of the injunction pending an appeal.

Furthermore, it can not be said that damages sustained by reason of the injunction being continued in force by an appeal are the proximate result of the issuing or pendency of the injunction in the court from which the appeal is taken. A somewhat similar question arose in Mix v. Singleton, 86 Ill. 194. That was a suit upon a bond conditioned, among other things, for the payment of "all damages caused by wrongfully suing out the injunction," and it was held that

damages sustained by reason of the injunction being kept in force by the appeal were not embraced within the condition of the bond.    See also Rees v. Peltzer, 1 Bradwell,· 315.

The amended suggestion, then, so far as it imported into the case a claim for damages pending the appeal, gave the court no authority to assess such damages against the complainant, because, 1, the suggestion of those damages was filed at a term subsequent to the one at which the suit was finally disposed of; and, 2, because such damages, being subsequent to the final disposition of the suit, were not such damages as could be recovered in this proceeding.

It appears that of the damages awarded the defendant $600 was "for loss of salary" during the time the bill was pending in the circuit court, and $2,700 was "for loss of salary" pending the appeal.    Unless the defendant was entitled to receive a salary during the period of this litigation and was wrongfully deprived of it by the injunction, the award of damages on account of salary was erroneous.    The rule is well settled that one partner can not charge the other partners or the firm for services rendered in the business of the copartnership unless there is an express agreement to that effect. As there is an implied obligation upon every partner to exercise due diligence and skill and to devote his services and labor for the promotion of the common benefit of the concern, it follows that he must do it without any reward or compensation unless it be expressly stipulated for between the partners. Lewis v. Moffett, 11 Ill. 392; Roach v. Perry, 16 Id. 37; King v. Hamilton, Id. 190; Story on Part. §§ 182–185; Pars. on Part. 229, and authorities there cited.

In this case the defendant expressly stipulated in the articles of copartnership to devote his entire time, skill and attention to the prosecution of the firm business, but there was no agreement for the payment to him of any compensation or salary therefor.    The only stipulation upon which he relies in his claim for salary is one which provided that said partners should respectively, during the first five years of the copartnership, draw no more money out of their business for their own personal use than should be absolutely necessary for

the support of their families, which should not exceed the sum of $100 per month for each, the residue of the profits to be applied to the business of the firm. This is in no sense an agreement for the payment of a compensation or salary to the defendant. The money was not to be drawn as compensation but as a division between the partners, *pro tanto*, of the partnership assets. The provision constituted a mere limitation upon the amount which the partners should respectively be at liberty to draw out of the partnership funds for their private use, or, in other words, a limitation for the period of five years upon their division of the profits. It follows that the allowance of damages for loss of salary was wholly unwarranted.

We are of the opinion that the amount of damages awarded the defendant on account of solicitor and counsel fees, is unsupported by the evidence. The main scope and object of the bill was to obtain a dissolution of the copartnership and a distribution of the copartnership assets, and the injunction restraining the defendant during the litigation from interfering in the copartnership affairs was merely incidental. There is considerable evidence of services by solicitors and counsel while the case was °pending in the Supreme Court, directed specifically to getting rid of the injunction or to obtaining some modification of its terms, but as we have already held that damages resulting from the injunction being continued in force by the appeal were not proper matters for consideration in the assessment of damages in the circuit court, it will be unnecessary for us to consider the evidence on that subject. It appears, however, that immediately after the injunction was first awarded by the circuit court, the defendant retained a solicitor and counsel to appear and defend the bill, who, after investigating the case, prepared an answer, and also drew a number of affidavits to be used on a motion for a dissolution of the injunction, and the evidence tends to show that he afterward made and argued such motion, basing the same upon said answer and affidavits and that the motion was overruled. Before performing further services, said solicitor and counsel withdrew from the case,

having charged his client $150 for all the services he had rendered. There is no evidence that any subsequent motion to dissolve the injunction was made while the case was pending in the circuit court, or any further services rendered having a specific reference to the injunction. The case was heard on pleadings and proofs, and a final decree rendered dismissing the bill for want of equity, which decree operated as a dissolution of the injunction. The damages awarded on account of solicitor and counsel fees for services rendered in the circuit court, were $500.

The rule undoubtedly is that costs and expenses, reasonable in amount, incurred for the single object of obtaining a discharge of the injunction, are allowable as part of the damages sustained by reason of the injunction. But where counsel fees and expenses are incurred in defeating the action, and the dissolution of the injunction is only incidental to that result, such fees and expenses are not allowable. 2 Sutherland on Dam. 65, 68.

This rule has been repeatedly laid down and enforced in this State. Thus in Jevne v. Osgood, 57 Ill. 340, it is said: "The design of the statute is not that the defendant shall, where the injunction is dissolved, recover his attorney's fees for all that has been or may be done in the case. To give the statute such an unreasonable construction, would render it an instrument of great oppression. It was intended to reimburse the defendant for money which he paid, or for which he has become liable *on the motion to dissolve.*" Again, in Elder v. Sabin, 66 Ill. 126, it is said: "The statute only allows the assessment of damages sustained by reason of improperly suing out the injunction, and the damages must be confined alone to that ground. The charge of lawyer's fees could only extend *to the motion to dissolve* the injunction." To same effect are Blair v. Reading, 99 Ill. 600; Darst v. Gale, 83 Id. 136; Wilson v. Haecker, 85 Id. 349; Noble v. Arnold, 23 Ohio St. 264; Langworthy v. McKelvey, 25 Iowa, 48; Hovey v. Rubber-tip Pencil Co. 50 N. Y. 335; Disbrow v. Garcia, 52 Id. 654.

So much of the $150 charged by the counsel who pre-

Gerard v. Gateau.

pared, made and argued the motion to dissolve the injunction as properly appertained to that motion, was doubtless allowable as damages, but beyond that we find no evidence warranting any allowance for counsel fees. So far as appears, all other services were rendered in endeavoring to defeat the suit, and would have been just as necessary if there had been no injunction.

The defendant has assigned for error, the refusal of the court to award him damages under the remaining items of his suggestion. The most important of these items is, for defendant's share of the profits of the firm business, which would have accrued if the injunction had not been issued, and the defendant had continued to have charge of the business. Damages to the defendant's business and a consequent loss of profits, if any such resulted from the injunction, are, we think, allowable as damages "by reason of the injunction." But we are not satisfied that any such damages have been shown. The effect of the injunction was to withdraw the defendant from the management of the firm business, but the evidence is very conflicting as to whether that produced a depressing or salutary effect upon the business. There is very considerable evidence tending to show that the defendant was lacking in the qualifications necessary for the successful management of the copartnership affairs, and that the manager who was placed in charge of the business after the injunction was issued, was, to say the least, quite as competent to manage it successfully and profitably as the defendant.

Much reliance is placed by the defendant, so far as this question is concerned, upon the evidence tending to show that during the time he managed the business it yielded large profits, but that afterward the profits were greatly diminished. This state of things, however, seems to be explained by evidence tending to show that, at about the time the injunction was issued, the general condition of the market for the class of products manufactured by the defendant's firm had so changed and become so depressed as to make it difficult, by any management, to realize any profits from the business, and that as a result most of the other firms then en-

gaged in the same business in Chicago became insolvent. The court below seems to have reached the conclusion, in view of all the evidence, that no damages under this specification were proved, and we are inclined to the opinion that such conclusion was warranted by the evidence.

The only remaining item of damages claimed, is for interest on the defendant's capital invested in the business. We see no foundation for this claim. There was no agreement between the copartners for the payment of interest to the defendant on his capital, the only agreement as to interest being to pay interest to the complainant on that portion of his contribution to the firm, which was in excess of the amount contributed by the defendant. But even if there had been such agreement, there is no reason for holding that such interest was lost by means of the injunction. The defendant's claim for interest would remain a valid claim against the firm to be allowed the defendant on the final accounting between the copartners at the dissolution of the firm.

The cross-errors will be overruled and the errors assigned by the complainant sustained to the extent above indicated, and the decree will therefore be reversed and the cause remanded for further proceedings.

Decree reversed.